*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1495**

State of Minnesota,
Respondent,

vs.

Paige Julieanna Wentzel,
Appellant.

**Filed July 18, 2016
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-14-2229

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kenneth N. Potts, Kenneth N. Potts, P.A., Mound City Attorney, Minnetonka, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Police arrested Paige Wentzel for driving while impaired, read her the implied-consent advisory, and administered a breath test on her agreement. The test showed that

Wentzel's alcohol concentration was 0.19, and the state charged her with driving while impaired. Wentzel moved the district court to suppress the test results, arguing that her consent was involuntary. The district court denied the motion and found Wentzel guilty. Because the district court did not clearly err by finding that the circumstances demonstrate that Wentzel freely and voluntarily consented to the test, we affirm.

## FACTS

Early one morning in January 2014, Orono police officer Brent Rasmussen stopped a Land Rover for speeding. Officer Rasmussen smelled the strong odor of an alcoholic beverage coming from the driver, 18-year-old Paige Wentzel. He also noticed that her speech was slurred and her eyes were watery. The officer administered field sobriety tests, which indicated that Wentzel was intoxicated. Wentzel took a preliminary breath test, which corroborated the officer's impression that she was drunk.

Officer Rasmussen arrested Wentzel and took her to the police station. He read her the implied-consent advisory, which, among other things, warns, "Minnesota law requires you to take a [chemical] test" and "[r]efusal to take a test is a crime." Wentzel said she understood. She first said she did not want to contact an attorney but soon changed her mind and called her father, a retired lawyer. She spent more than 20 minutes talking with him. Officer Rasmussen then asked her to take a breath test. She agreed to take the test, which indicated an alcohol concentration of 0.19, twice the statutory limit of 0.08.

The state charged Wentzel with fourth-degree driving while impaired based alternatively on her alcohol concentration from the test results and on her physical impairment. She unsuccessfully moved the district court to suppress the test results,

2

arguing that her consent was coerced. Wentzel stipulated to the state's evidence on the alcohol-concentration charge under criminal rule 26.01, subdivision 4, in exchange for the state's dismissal of the impairment charge. The district court found that Wentzel freely and voluntarily consented to the breath test and found her guilty. This appeal follows.

## DECISION

Wentzel argues that the breath test violated her constitutional rights because she did not freely and voluntarily consent to it. The United States and Minnesota Constitutions protect individuals from unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1413 (1989). A warrantless search conducted without probable cause is per se unconstitutional. *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994). But a warrant is unnecessary when one consents to the test. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013). A district court's voluntariness decision is a matter of fact reviewed for clear error. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). It depends on the totality of circumstances, including "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* (quotation omitted). A driver's agreement to take a chemical test is not coerced simply because Minnesota has criminalized test refusal. *Brooks*, 838 N.W.2d at 570. And the Supreme Court has recently deemed constitutional Minnesota's statute criminalizing a driver's breath-test refusal. *See Birchfield v. North Dakota*, No. 14-1468, 2016 WL 3434398 (U.S. June 23, 2016).

Wentzel's situation is similar to that of the appellant in *Brooks*. There the supreme court held that Brooks consented to testing based on several facts: he was not repeatedly

3

questioning or asked to consent after days in custody; he had the opportunity to consult with a lawyer before taking the test; and police read him the implied-consent advisory, which implied he had a choice whether to take the test. *Brooks*, 838 N.W.2d at 571–72. Wentzel similarly agreed to take a breath test shortly after being arrested, was read the implied-consent advisory, and was given the opportunity to speak with an attorney.

Wentzel tries to distinguish *Brooks*. She fails. Wentzel notes that she was less familiar with the law and the justice system than was Brooks, but system familiarity was but one factor in *Brooks*. She cites caselaw discussing the susceptibility of juveniles pressured by authority figures, like police, *see, e.g.*, *J.D.B. v. North Carolina*, 564 U.S. 261, 271–77, 131 S. Ct. 2394, 2402–06 (2011), but she is a young adult, not a juvenile. She highlights that she did not first speak with a practicing impaired-driving attorney. But the *Brooks* court analyzed the attorney call this way: "[T]hat Brooks consulted with counsel before agreeing to take each test *reinforces* the conclusion that his consent was not illegally coerced." 838 N.W.2d. at 571 (emphasis added). The term "reinforces" implies that the attorney call merely added to the court's conclusion and that it would not have decided differently even if Brooks had not called counsel. It is "the ability to consult with counsel" that makes a subsequent decision more likely voluntary. *Id.* at 572. Wentzel, like Brooks, had "the ability to" contact an attorney. The officer gave her phonebooks and the chance to call any attorney. That she reached a retired attorney rather than a practicing implied-consent attorney does not suggest coercion.

Wentzel also maintains that she was never told that she had the right to refuse the test. The record defeats the argument. Although Officer Rasmussen did not expressly tell

4

Wentzel that she could refuse the test, she was read the implied-consent advisory, which informed her that "[r]efusal to take a test is a crime." This implicitly indicated that the test may be refused. *See id.* at 570 ("Police read Brooks the implied consent advisory before asking him whether he would take all three tests, which makes clear that drivers have a choice of whether to submit to testing."). And although Wentzel testified at an implied-consent hearing that she took the test because she felt she had no choice, her statements on cross-examination demonstrate that she knew she could refuse the test:

> Q:   So when you were read paragraph 4, before making your decision about testing, you must make a decision on you own, you must make your decision within a reasonable period of time; what does that mean to you?
> A:   That I have to decide whether or not to take the test --
> Q:   Ok- --
> A:   -- and within a certain amount of time.
> Q:   -- okay. So it would be your decision whether or not to take the test; correct?
> A:   Correct.

We are also unpersuaded by Wentzel's argument that her consent was involuntary because Officer Rasmussen told her she could go home if she took the test. The officer's statement that she could be released to her father after she took the test was an accurate explanation of what could happen if she complied. It was not coercive. The totality of the circumstances supports the district court's finding that Wentzel freely and voluntarily consented to the test.

**Affirmed.**

5